**In re Rodger T. Atwood III**

*Robert L. O'Brien,* for petitioner.
*Rodger T. Atwood II,* in propria persona.

OLER, *J.,* December 22, 1992—This case arises out of a petition for name change filed by Karen Kempf, seeking a change in the name of her minor son. Subsequent to a hearing held on November 30, 1992, the following findings of fact, discussion and order of court are made and entered.

### FINDINGS OF FACT

(1) The present petition for name change was filed on September 17, 1992; a hearing was held on the matter on November 30, 1992, pursuant to proper notice to the public and to the non-petitioning parent in ac-

224

cordance with the Act of December 16, 1982, P.L. 1309, §6.

(2) Petitioner is Karen Kempf, an adult individual residing at Apt. 1, 210 Hill Street, Mount Holly Springs, Cumberland County, Pa.

(3) The subject of the petition for name change is Rodger Theodore Atwood III, a minor residing with petitioner at Apt. 1, 210 Hill Street, Mount Holly Springs, Cumberland County, Pa.

(4) The petition seeks to change the name of Rodger Theodore Atwood III to Rodger Theodore Kempf.

(5) The natural father of the minor is Rodger, or Roger,[1] Theodore Atwood II, an adult individual incarcerated at the time of hearing herein at the York County Prison, York County, Pa., on federal charges.

(6) The said natural father opposes the petition for name change.

(7) The basis for the requested name change, as stated in the petition, is that "the child's namesakes, both his father and grandfather, are notorious criminals, whose names have been referenced often in the local press concerning crimes, primarily associated with drugs, although, one recent news report alleged the possible involvement of [grandfather] Rodger Theodore Atwood [Sr.] in a murder investigation."

(8) The minor was born on November 29, 1986, being 6 years old as of the hearing date.

(9) The minor resided with his parents, who were not married, in Perry County, from birth until January 1991, when the parents separated; since then, he has

---

1. The name *Roger* appears with more than one spelling in these proceedings.

resided with his mother; he and his mother presently live at the aforesaid Cumberland County address.[2]

(10) Following the parents' separation, petitioner filed a complaint for custody of the minor, and the father was granted visitation.

(11) Initially, and for a few months, the father spent at least two days a week with the minor; however, visitation with that degree of frequency eventually lapsed.

(12) On February 5, 1992, a federal grand jury indictment was filed in the U.S. District Court for the Middle District of Pennsylvania at no. 1:CR-92-030, charging the father with (a) conspiracy in 1989-90 to distribute and possess with the intent to manufacture and distribute in excess of 100 kilograms of marijuana, and (b) distribution and possession with intent to manufacture and distribute marijuana, in 1989-90, and aiding, abetting, counseling, commanding and processing the same. Also charged in the indictment was the minor's grandfather, Rodger T. Atwood Sr., among others.

(13) On the same date, indictments were filed charging the grandfather and a brother of the father with additional drug-related offenses.

(14) On June 12, 1992, the father entered a guilty plea; it is petitioner's understanding that he has been sentenced to prison for five years.

(15) According to the petitioner's testimony, which the court accepts, the foregoing resulted in publicity in the form of at least three "articles in the Carlisle

---

2. Petitioner and the father apparently lost a house which they owned in Perry County to federal drug forfeiture proceedings. These proceedings were commenced December 17, 1991, at a time when the father and another woman, whom he later married, were occupying the premises.

[Cumberland County] *Sentinel* claiming that they were involved in a drug ring. They operated a drug ring in Carlisle bringing in a large amount of drugs to the area, and they were also investigating his grandfather, that he may have been involved in a murder possibly."

(16) According to the petitioner's testimony, which the court accepts, the father is "not very well liked by people [in the Carlisle community]. He has quite a bad reputation."

(17) The minor has been asked by a few of his friends if he is related to the person mentioned in the newspaper, and was upset by it.

(18) The minor is aware that his father is in jail and, according to the petitioner, "already thinks that [the name change has] gone through. He already refers to himself as Rodger Kempf."

(19) With respect to the name change, petitioner has told the minor that she "wanted to have his name changed to [hers] since [they] were living together, and that [she] felt that it was easier for [them] to have the same last name, and he accepted it."

(20) No testimony of the minor was presented at the hearing.

(21) In the two-year period since the minor's parents have been separated, petitioner has directly received between $150 and $200 in child support from the father.

(22) Since the father's incarceration, he has written his son several times.

(23) The father's reasons for opposing the name change are stated in a letter sent to petitioner's counsel as follows:

"I am writing this in regards to an action you filed on behalf of Karen Kempf. I am most concerned about this case.

"I have to question the motives of Ms. Kempf. She claims concern for our child, but, I feel this is a ruse. In my opinion her major concern is herself.

"Ms. Kempf and I remained together five years after the birth of our child. He knows me as his father [and] he affectionately calls his grandfather 'Pappy.'

"He already knows his name is Atwood. I wonder, as should you, what trauma this would cause my boy.

"Granted, I've made many mistakes in my life. But, is this reason to punish a child? No. To take his namesake would be to deny him his own identity.

"As you're well aware, I've been granted partial custody. I've every intention of fulfilling my parental duties at the earliest possible date. Even now, I'm attempting to maintain correspondens [sic] with my boy.

"In closing, I wish to pose this question to you. What do children know of the adult world? By the date of my release he'll be in third grade. That leaves plenty of time for me to show him that the name Atwood does not equate burden. But, a man who can change. This will be accomplished by action. Actions that I fully intend to take."[3]

(24) No petition for involuntary termination of the father's parental rights has been filed.

(25) There are no judgments or decrees of record or any other matter of like character against the minor.

## DISCUSSION

### Statement of law.

By statute in Pennsylvania, subject to certain procedural provisions[4] "[t]he court of common pleas of

---

3. The court appreciates the action of petitioner's counsel and petitioner in submitting this letter as an exhibit for the record.

4. Act of December 16, 1982, P.L. 1309, §6.

any county may by order change the name of any person resident in the county."[5]   On occasion, the person involved will be a minor.[6]

The law pertaining to petitions for changes of names of minors has been the subject of recent discussion by the Pennsylvania Supreme Court in *In re Change of Name of Zachary Thomas Andrew Grimes to Zachary Thomas Andrew Grimes-Palaia,* 530 Pa. 388, 609 A.2d 158 (1992).[7]   As noted generally by Justice Cappy in *Grimes,* "[t]he focus of the statute and the procedures thereunder, indicate a liberal policy regarding change of name requests.  The necessity for judicial involvement centers on governmental concerns that persons not alter their identity to avoid financial obligations. Beyond requiring compliance with the notice provisions, the statute provides no additional guidance for courts considering petitions for change of name.  Absent any legislative criteria, courts reviewing petitions for change

---

5. Act of December 16, 1982, P.L. 1309, §2, 54 Pa.C.S. §702 (1992 Supp.).

6. See, e.g., *In re Change of Name of Zachary Thomas Andrew Grimes to Zachary Thomas Andrew Grimes-Palaia,* 530 Pa. 388, 609 A.2d 158 (1991); *In re Lavin Name Change Petition,* 4 D.&C.4th 1 (1989); *In re Petition of J.M. & R.M.,* 32 D.&C.3d 229 (1984).

7. The decision of the court in *Grimes* was announced in an opinion of Justice Cappy, in which Justices Flaherty and McDermott joined and as to which Chief Justice Nix concurred in the result. Justices Zappala and Papadakos dissented, and Justice Larsen did not participate.  *In re Change of Name of Zachary Thomas Andrew Grimes to Zachary Thomas Andrew Grimes-Palaia, supra.*  Under similar circumstances, the Pennsylvania Superior Court has held the decision to be not, in a strict sense, of binding precedential effect. *In re Trust of Bachman,* 338 Pa. Super. 546, 488 A.2d 27 (1985). Nevertheless, the case is an instructive one and the Superior Court's position on the subject under discussion is in any event not dissimilar to that adopted in the opinion of Justice Cappy.  See note 9, *infra.*

of name exercise their discretion in such a way as to comport with good sense, common decency and fairness to all concerned and to the public."[8]

With respect to the standard to be employed by a trial court in considering a petition to change the name of a minor child, and the burden of proof in such proceedings, the opinion of Justice Cappy states as follows:

"We can discern no rational basis for disregarding the great weight of authority, requiring a court to exercise discretion in the best interest of a child, when reviewing a minor's petition for change of name. In adopting this standard in Pennsylvania, we further hold that a petitioner in such instance must bear the burden of establishing that a change would be in the best interest of the child."[9]

"Specific guidelines are difficult to establish, for the circumstances in each case will be unique, as each child has individual physical, intellectual, moral, social and spiritual needs.... However, general considerations

---

8. *In re Change of Name of Zachary Thomas Andrew Grimes to Zachary Thomas Andrew Grimes-Palaia, supra* at 392, 609 A.2d at 160 (per Justice Cappy with two justices joining and one justice concurring in the result).

9. *In re Change of Name of Zachary Thomas Andrew Grimes to Zachary Thomas Andrew Grimes-Palaia, supra* at 393-94, 609 A.2d at 161 (per Justice Cappy, with two justices joining and one justice concurring in result). The Pennsylvania Superior Court has stated that "the child's best interests unquestionably must control in a proceeding to change a minor child's surname ... [t]he party urging the minor child's change of name has the burden of coming forward with evidence that the name change requested would be in the child's best interest, ... Neither parent is to be accorded a presumption." *In the Matter of Michael Ronald Montenegro Jr.,* 365 Pa. Super. 98, 101-02, 528 A.2d 1381, 1382-83 (1987). (citations and footnote omitted)

should include the natural bonds between parent and child, the social stigma or respect afforded a particular name within the community, and, where the child is of sufficient age, whether the child intellectually and rationally understands the significance of changing his or her name."[10]   (citation omitted)

The child's preference, the effect of the proposed change on the preservation and development of the child's relationship with each parent, the duration of use by the child of a name, and the distinction or notoriety possessed by a name are among the factors which have been utilized in the process of trial court adjudication. *In re Niedbala, a/k/a Hickey,* 36 D.&C.3d 397 (1985).   Factors said to be irrelevant to the best interest of a child who lacks sufficient understanding to choose a name for himself or herself are "protectable parental interests or whether the parents are married, divorced or never married,[11] or whether they are male or female." *Id.* at 402.

Appellate judicial decisions on the subject have included a recent Supreme Court reversal and remand of a lower court's order granting a name change where the record contained conflicting representations as to the minor's preference, testimony as to close bonds between the child and the non-petitioning parent's family, and a suggestion of hostile motivation by the petitioning parent in connection with the non-petitioner.[12]

---

10. *In re Change of Name of Zachary Thomas Andrew Grimes to Zachary Thomas Andrew Grimes-Palaia, supra* at 394, 609 A.2d at 161 (per Justice Cappy, with two justices joining and one justice concurring in the result).

11. At birth, a child of an unmarried woman may be registered with any surname requested by the mother. 28 Pa. Code §1.6.

12. *In re Change of Name of Zachary Thomas Andrew Grimes to Zachary Thomas Andrew Grimes-Palaia, supra.*

Trial court decisions in this area have included, variously, a grant of name change where the affected minors had become established in a new family unit, where one of them had been using the new family surname, and where the non-petitioning parent had been sentenced to up to 15 years in prison for attempted murder, inter alia;[13] a denial of name change where the minor's registered name was that of a loving and reputable father, where the record was ambivalent as to relative usage of the registered and proposed names, where the minor identified herself in uncontrived situations by the registered name, where the proposed name was that of her mother by a former marriage, was that of her half-siblings, and was also reputable, and where abandonment of the registered name would deprive the child of another link to the non-petitioning parent;[14] and a denial of name change where the proposed surname was that of the mother, where the affected minors expressed a preference for the proposed name, where the mother's hostility toward the father was evident in the proceedings, and where the reason offered for the proposed change was the minors' love for their mother and facilitation of family traveling.[15]

In denying a request for change of a minor's name, one court has noted that, "[i]n this age of numerous divorces and illegitimate children, there is nothing unusual about varying family surnames and society does not frown upon it."[16] Another court has observed that a petitioning parent's relationship with a child "will abide" regardless of the decision of a name change, but a change of the name will "deprive [the child]

---

13. *In re Petition of J.M. & R.M., supra.*

14. *In re Niedbala, a/k/a Hickey, supra.*

15. *In re Lavin Name Change Petition, supra.*

16. *In re Lavin Name Change Petition, supra* at 5.

of another link to the [parent] from whom [the child] is separated...."[17]

## Application of Law to Facts

Militating in favor of ordering the name change requested in the present case are (a) the lack of respect accorded the child's present name among at least some members of the local community and (b) the father's non-exemplary conduct as a parent in the recent past. Militating against such an order are (a) the absence in the record of testimony of the child, and the indication that he is not fully aware of the petitioner's purpose in seeking a name change, (b) the child's lifelong use of the present surname, (c) the significant family history between father and child prior to parental separation, (d) the desire expressed by the father for a parental relationship with his son, (e) the adverse effect upon such a relationship which a name change would have in the father's present circumstances, (f) the lack of substantial evidence of harm suffered by the child from his existing surname, (g) the less than unique poor reputation of the father, and (h) the fact that the mother's devotion to the child will not be diminished by a retention of the present name. On balance, and in view of the burden of proof applicable herein, the court does not believe that a change of name of the minor is warranted at this time.

## ORDER OF COURT

And now, December 22, 1992, upon consideration of the petition of Karen Kempf for change of name of a minor, Rodger Theodore Atwood III, born November 29, 1986, to Rodger Theodore Kempf, and following a hearing, the petition is denied.

---

17. *In re Niedbala, supra* at 403.